IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JERRY F. FORTMANN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-1022

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.*   *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . 2

*III.*  *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    *A.*   *Fortmann's Education and Employment Background* . . . . . . . . . . 3
    *B.*   *Vocational Expert's Testimony from Administrative*
        *Hearing Held on February 10, 2015* . . . . . . . . . . . . . . . . . . . . 4
    *C.*   *Fortmann's Medical History* . . . . . . . . . . . . . . . . . . . . . . . 5

*IV.*  *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    *A.*   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . 8
    *B.*   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . 11
        *1.*   *Severe Impairment* . . . . . . . . . . . . . . . . . . . . . 11
        *2.*   *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . 13
        *3.*   *Hypothetical Questions* . . . . . . . . . . . . . . . . . . . . 20

*V.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*VI.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 4) filed by Plaintiff Jerry F. Fortmann on July 22, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Fortmann asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Fortmann requests the Court to remand this matter for further proceedings.

# II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive

---

[1] On September 29, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

. . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Fortmann's Education and Employment Background

Fortmann was born in 1966. He is a high school graduate. At the administrative hearing, Fortmann testified that while in high school, he was enrolled in a special education course for learning disabilities. He also testified he is able to read and write the

English language. In the past, Fortmann worked as a construction worker, tractor trailer truck driver, and plasma table operator.

## B. Vocational Expert's Testimony from Administrative Hearing Held on February 10, 2015

At the administrative hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who is limited to:

> lifting 10 pounds occasionally, five pounds frequently. Standing or walking up to two hours a day, sitting anywhere from six to eight hours. Hypothetical individual number one should -- could only occasionally climb, balance, stoop, kneel, crouch, crawl, that can never climb ropes, ladders or scaffolds. This hypothetical individual should be able to change postural positions approximately every 30 minutes. This would entail rising from a seated position to stand two to three minutes before returning to a seated position all without leaving the work area. This hypothetical individual would be limited to tasks learned in 30 days or less involving no more that [(sic)] simple, work related decisions requiring little to no judgment with only occasional work place changes.

(Administrative Record at 61-62.) The vocational expert testified that under such limitations, Fortmann could not perform his past relevant work, but could perform the following jobs: (1) document preparer, (2) order clerk, and (3) addresser. The ALJ asked a second hypothetical that was identical to the first hypothetical except the individual would also have difficulty performing at a consistent pace resulting in "either slow pace or being off task approximately 25 percent of each work day."[2] The vocational expert testified that under such limitations, Fortmann would be precluded from competitive employment. Finally, the ALJ presented the vocational expert with a third hypothetical, again identical to the first hypothetical, except the individual would have difficulty focusing and concentrating for prolonged periods of time, resulting in "an inability to sustain

---

[2] Administrative Record at 63.

4

concentration and attention for two hours at a time throughout an eight hour work day."[3] Again, the vocational expert testified that under such limitations, Fortmann would be precluded from competitive employment.

### C. Fortmann's Medical History

On February 19, 2013, at the request of Disability Determination Services ("DDS"), Fortmann was referred to Dr. Howard T. Kim, M.D., for a comprehensive medical history review and physical examination. Fortmann's chief complaints included pain and weakness in his right shoulder, arm, leg, hip, and ankle, low back pain, and headaches. Specifically, Fortmann reported:

> in July 2010 he was working on his semi-truck when his codriver accidently ran over him with the truck over his right leg, ankle, and shoulder. He had orthopedic surgery with rod placed from right hip to his right knee as well as pins placed in his right knee and hip. He had some physical therapy, but continues to have pain and weakness in his right leg, hip, and ankle. He rates the pain at 8/10. He has always had low back pain, but that has gotten worse over the last year. He rates the back pain at 6/10. His headache started after his accident involving the semi truck. He rates the pain at 6/10 and takes ibuprofen once in a while for it. He states that he separated his right shoulder when he was run over by a semi-truck and since then, he has had some weakness there. He states that his right arm falls asleep once in a while.

(Administrative Record at 466.) Upon examination, Dr. Kim diagnosed Fortmann with right upper and lower extremity pain and weakness, low back pain, and headaches. Dr. Kim opined:

> Based on his history and physical examination, [Fortmann] appears capable of lifting up to 10 pounds occasionally. He is recommended to avoid repetitive bending, stooping, twisting, kneeling, squatting, crawling as well as prolonged standing and walking. He is recommended to limit above the shoulder

---

[3] *Id.*

> lifting with right arm as well as climbing. He is recommended
> for mostly sit down activity. He should be able to shift
> positions as often as he needs to.

(Administrative Record at 467.)

On February 25, 2013, at the request of DDS, Fortmann was referred to Dr. Keith F. Gibson, Ph.D., for a mental status examination. In reviewing his medical background, Dr. Gibson noted Fortmann suffers from headaches and pain associated with a trucking accident. Dr. Gibson also noted a history of depression with hospitalization for suicidal ideation after the dissolution of his first marriage, and treatment for alcohol abuse and cocaine abuse. At the time of the examination, Fortmann was in early full alcohol and drug remission. Upon examination and testing, Dr. Gibson diagnosed Fortmann with pain disorder associated with both psychological factors and general medical condition, adjustment disorder with depressed mood, and alcohol dependence in early full remission. Dr. Gibson opined:

> [Fortmann] appears to be capable of remembering and
> understanding simple instructions, procedures, and locations
> in a work setting. Chronic pain and chronic depressive
> symptoms significantly impair [Fortmann's] capacity to
> maintain attention, concentration, and pace sufficient for full-
> time gainful employment. Persistent ideas of reference predict
> problematic interaction with others in a work environment,
> although this would not be the case in work environments
> where interaction with others was minimal and work activities
> primarily solitary. [Fortmann's] judgment appears to be
> intact. He is making reasonable decisions for himself on a
> day-to-day basis. Headache pain and problems with recall
> interfere with [his] capacity to respond adaptively and flexibly
> to changes in the work place.

(Administrative Record at 462.)

On March 6, 2013, Dr. C. David Smith, M.D., reviewed Fortmann's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Fortmann. Dr. Smith determined Fortmann could: (1) occasionally lift

and/or carry 10 pounds, (2) frequently lift and/or carry less than 10 pounds, (3) stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Smith also determined Fortmann could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Smith found no manipulative, visual, communicative, or environmental limitations.[4]

On April 9, 2013, Dr. Russell Lark, Ph.D., reviewed Fortmann's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Fortmann. On the Psychiatric Review Technique assessment, Dr. Lark diagnosed Fortmann with depressive disorder, somatoform disorder, learning disorder, and alcohol abuse in remission. Dr. Lark determined Fortmann had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Lark found Fortmann was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions.[5] Dr. Lark concluded:

_____

[4] On August 26, 2013, Dr. John May, M.D., provided DDS with a second RFC assessment for Fortmann. Dr. May concluded "[b]ased on the evidence in file, [Dr. Smith's] assessment . . . is hereby affirmed as written." Administrative Record at 112.

[5] On August 26, 2013, Dr. David A. Christiansen, Ph.D., provided DDS with a second Psychiatric Review Technique and mental RFC assessment Fortmann. Dr. Christiansen found Fortmann "has not documented worsening of his mental condition.
(continued...)

[Fortmann's] memory, attention, concentration, and pace may vary but are adequate for tasks not requiring sustained attention with little evidence to support an amnestic disorder. The preponderance of evidence in file indicates [Fortmann] is able to complete at least simple, repetitive tasks on a sustained basis.

(Administrative Record at 80.)

On February 25, 2014, Fortmann was seen at the University of Iowa Hospitals and Clinics sleep clinic for loud snoring, disrupted sleep, and daytime hypersomnolence. In discussing his sleep history, Fortmann reported "history of frequent nocturnal arousals (wakes up 3-4 times per night on average), does find it difficult to fall back asleep on many of these occasions, feels his back pain is the cause of many of the episodes of nocturnal arousals."[6] Fortmann also reported a history of excessive daytime sleepiness, and indicated he naps 1-2 hours most afternoons. Upon examination, Dr. Siddharth Bajpai, M.D., opined Fortmann's "symptomatology, body habitus and physical exam are highly suggestive for OSA [(Obstructive Sleep Apnea)]."[7] On July 17, 2014, Fortmann underwent a polysomnography which confirmed Fortmann's diagnosis of obstructive sleep apnea. Dr. Mark Eric Dyken, M.D., recommended a CPAP trial, weight control and good dietary habits, exercise, and good sleep hygiene as treatment.

## IV.  CONCLUSIONS OF LAW

### A.  ALJ's Disability Determination

The ALJ determined Fortmann is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

---

[5](...continued)
Therefore, [Dr. Lark's] assessment . . . is hereby affirmed as written." Administrative Record at 114.

[6] Administrative Record at 633.

[7] Id. at 636.

regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of

other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Fortmann had not engaged in substantial gainful activity since August 25, 2012. At the second step, the ALJ concluded from the medical evidence that Fortmann had the following severe impairments: depressive disorder, degenerative joint disease in his right knee, degenerative disc disease of the back, and history of substance abuse. At the third step, the ALJ found Fortmann did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Fortmann's RFC as follows:

> [Fortmann] has the residual functional capacity to perform sedentary work . . . such that he would be limited to lifting and carrying no more than ten pounds occasionally and five pounds frequently. He could stand and/or walk up to two hours a day, and he could sit anywhere from six to eight hours a day. He could only occasionally climb, balance, stoop, kneel, crouch, and crawl. However, he could never climb ladders, ropes, or scaffolds. Further, he should be able to change postural positions approximately every thirty minutes. This would entail rising from a seated position to stand for two to three minutes before returning to a seated position, all without leaving the work area. In addition, he would be limited to tasks learned in thirty days or less, involving no more than simple work related decisions, requiring little to no judgment with only occasional workplace changes.

(Administrative Record at 14-15.) Also at the fourth step, the ALJ determined Fortmann is unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Fortmann could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Fortmann was not disabled.

## B. Objections Raised By Claimant

Fortmann argues the ALJ erred in three respects. First, Fortmann argues the ALJ erred by failing to find his sleep apnea to be a severe impairment. Second, Fortmann argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence and does not properly account for all of his impairments and functional limitations. Lastly, Fortmann argues the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Severe Impairment

Fortmann argues the ALJ erred in her assessment at step 2 of the sequential analysis by failing to find his sleep apnea to be a severe impairment. Fortmann maintains the ALJ's determination that his sleep apnea is not a severe impairment is not supported by substantial evidence. Fortmann concludes that the ALJ's failure to find a severe impairment at step 2 of the sequential analysis warrants reversal.

"An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citations omitted). In other words, if the impairment would only have a minimal effect on a claimant's ability to work, then it would not constitute a severe impairment. *Id.* (citation omitted). The burden is on the claimant to establish his or her impairment(s) is severe. *Id.* (citation omitted). According to the Eighth Circuit Court of Appeals "[s]everity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous

occasions the Commissioner's finding that claimant failed to make this showing." *Id.* at 708 (citations omitted).

In her decision, the ALJ addressed Fortmann's sleep apnea as follows:

> In addition, the undersigned considered [Fortmann's] non-severe impairments of obstructive sleep apnea (OSA), and mild . . . neuropathy in his upper extremities. . . . With respect to [Fortmann's] sleep apnea, he was scheduled for a CPAP trial. Further, he was recommended to avoid unnecessary depressants, and he was advised to control his weight. (Exhibit 16F/33).

(Administrative Record at 13.) Fortmann asserts that due to his sleep apnea he is fatigued in the afternoon, and this affects his attention and concentration, making the sleep apnea a severe impairment. While Fortmann states that his concentration and attention are affected by sleep apnea, there is no medical evidence in the record to support this. Furthermore, at various points in the ALJ's decision, she addresses Fortmann's concentration and attention. For example, the ALJ noted:

> With regard to concentration, persistence or pace, [Fortmann] has moderate difficulties. [He] reported that he was able to pay attention until he experienced a headache. However, [he] explained that he was able to finish an activity that he started. In addition, he was able to follow both written and spoken instructions, and he enjoyed reading and watching television if he did not have a headache (Exhibit 5E/7, 8). Moreover, [Fortmann] testified that he did not have problems with concentration or attention when he was on his medications.

(Administrative Record at 14.) The ALJ also noted in January 2015, after Fortmann had been diagnosed with obstructive sleep apnea, a mental status examination "confirmed that [he] was oriented, his concentration was good, and he denied suicidal ideation. (Exhibit 20F/17, 18)."[8] Moreover, Fortmann has not met his burden to show that his obstructive sleep apnea significantly limits his ability to perform basic work activities. *See Kirby*, 500

---

[8] Administrative Record at 17.

F.3d at 707-08. Indeed, Fortmann points to no evidence in the record which shows significant limitations in his ability to perform basic work activities based on his diagnosis of obstructive sleep apnea.

Therefore, having reviewed the entire record, the Court finds that the ALJ thoroughly considered and properly addressed Fortmann's diagnosis of obstructive sleep apnea. The ALJ also thoroughly considered and properly addressed Fortmann's issues with concentration and attention. Accordingly, the Court finds the ALJ's determination at step 2 of the sequential test, that Fortmann's obstructive sleep apnea is not a severe impairment, is supported by substantial evidence. *See Anderson*, 696 F.3d at 793. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2.    *RFC Assessment*

Fortmann argues the ALJ's RFC assessment is flawed. Specifically, Fortmann argues the ALJ's RFC assessment is incomplete because it does not properly account for all of his impairments and functional limitations. For example, Fortmann asserts the ALJ's findings regarding his ability to stand and sit are not supported by substantial evidence. Similarly, Fortmann argues his limitations in concentration, attention, and pace are not adequately accounted for in the ALJ's RFC assessment. Thus, Fortmann concludes the ALJ's overall RFC assessment is not supported by substantial evidence in the record. Fortmann maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

13

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2008). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499

F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

The Court will first address the ALJ's consideration of the medical opinion evidence in the record. The ALJ thoroughly reviewed and addressed the opinions of Dr. Gibson (psychological consultative examiner) and Dr. Kim (physical consultative examiner). The ALJ addressed Dr. Gibson's opinions as follows:

> The undersigned finds that Dr. Gibson's opinions are generally inconsistent with the objective medical evidence. The undersigned notes that even [Fortmann] testified that when he was taking his medications properly, he did not have problems maintaining his concentration or attention (Testimony). Moreover, when [Fortmann] was abstaining from substances, his mood was better. During a session in August 2013, [Fortmann's] affect was described as bright and he was smiling during the session (Exhibit 10F/12). For these reasons limited weight is assigned to Dr. Gibson's opinions.

(Administrative Record at 17.) The ALJ also addressed the opinions of Dr. Kim:

> The undersigned certainly agrees that [Fortmann] has limitations significant enough to limit[] him to sedentary work. However, the undersigned notes that some of Dr. [Kim's] restrictions were not consistent with the testing performed during the evaluation as well as not consistent with the objective medical evidence. For example, Dr. [Kim] limited [Fortmann] in above shoulder lifting with his right shoulder, but the range of motion testing identified only a slight reduction in range of motion with internal rotation on the right. Moreover, his upper extremity strength was described as "good." (Exhibit 6F/5). Similarly, during an examination in January 2013, it was noted that [Fortmann's] right upper extremity had normal range of motion and strength, and he had no joint enlargement or tenderness. (Exhbit 11F/4). Further, with respect to Dr. [Kim's] restriction that [Fortmann] should be able to shift positions as often as needed, [Fortmann] did not have reduced range of motion in his lumbar spine, and [his] straight leg was normal. [Fortmann's] gait was described as only "slightly" antalgic and he had normal station. (Exhibit

10F/10). Further, [Fortmann] had no signs of sensory or reflex loss. (Exhibit 6F/6). The undersigned concludes that these findings do not support the severity of the limitations offered by Dr. [Kim]. As such, the undersigned assigns Dr. [Kim's] opinion little weight.

(Administrative Record at 17.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the medical opinion evidence from Drs. Gibson and Kim. The Court also finds that the ALJ provided "good reasons" for the weight she assigned to each of the medical opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Next, the Court will address the ALJ's conclusion that Fortmann is capable of sitting "anywhere from six to eight hours a day" and "change postural positions approximately every thirty minutes," which would entail "rising from a seated position to stand for two to three minutes before returning to a seated position, all without leaving the work area."[9] In her decision, the ALJ supports her RFC finding regarding Fortmann's sitting and standing abilities as follows:

> In addition, [Fortmann] developed low back pain after he lifted a pool table and sustained a lumbar strain. A magnetic reasoning [*sic*] imaging (MRI) identified bilateral foraminal narrowing on the existing L5 nerve especially on the left. In other words, [Fortmann] had degenerative disc disease at the L5-S1 level. However, [he] did not have any radicular symptoms. (Exhibits 3F/1; 3F/4; 12F/3). Further, [Fortmann's] gait was described as "normal." (Exhibit 3F/20).

---

[9] Administrative Record at 14-15.

> A neurological examination was performed in October 2013,
> and again, [Fortmann's] lower extremity strength was within
> normal limits and he had a normal gait and station. (Exhibit
> 16F/10). During a later assessment of [Fortmann's] back, it
> was identified that [he] had active range of motion within
> functional limits. [Fortmann] was merely referred for an
> EMG study and it was recommended that he engage in
> physical therapy. (Exhibit 16F/10, 16). An EMG study was
> performed and there was no evidence of lumbar radiculopathy.
> (Exhibit 16F/24). Moreover, treatment notes from May 2014
> emphasized that [he] went from the exam room chair to the
> exam table without any difficulty. He was swinging his leg as
> it was dangling over the table. He was in "absolutely no
> discomfort." [Fortmann's] body language informed his
> provider that [he] was not in severe pain. (Exhibit 12F/22).

(Adminsitrative Record at 16.)

Furthermore, in her decision, the ALJ also determined that Fortmann's activities

of daily living were not consistent with his alleged disabling symptoms with regard to

standing. For example, the ALJ noted:

> During a consultative examination, [Fortmann] reported that
> he resided at the Dubuque Rescue Mission and he worked in
> the kitchen twenty hours per week. [He] also noted that he did
> a lot of walking.

(Administrative Record at 19.)

Finally, in addressing Dr. Kim's finding that Fortmann would need to shift positions

as needed, and giving Dr. Kim's opinions limited weight, the ALJ found:

> Further with respect to Dr. [Kim's] restriction that [Fortmann]
> should be able to shift positions as often as needed, [Fortmann]
> did not have reduced range of motion in his lumbar spine, and
> [his] straight leg was normal. [Fortmann's] gait was described
> as only "slightly" antalgic and he had normal station. (Exhibit
> 10F/10). Further, [Fortmann] had no signs of sensory or
> reflex loss. (Exhibit 6F/6).

(Administrative Record at 17.)

Having reviewed the entire record, the Court concludes the ALJ properly considered Fortmann's medical records, observations of treating physicians, and Fortmann's own description of his limitations in making the ALJ's RFC assessment with regard to Fortmann's ability to sit and stand. *See Lacroix*, 465 F.3d at 887. The Court further finds the ALJ's RFC assessment with regard to Fortmann's ability to sit and stand is supported by substantial evidence in the record. *See Bernard*, 774 F.3d at 486. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Next, with regard to Fortmann's assertion that the ALJ failed to adequately consider the medical evidence as to her limitations in concentration, attention, and pace, including the effects of his sleep apnea, the Court believes that the ALJ properly considered and accounted for his alleged limitations in these areas. First, as discussed in section *IV.B.1* of this decision, the ALJ properly determined that Fortmann's sleep apnea was not a severe impairment. Second, the ALJ specifically addressed Fortmann's concentration and attention in her decision. For example, the ALJ noted:

> With regard to concentration, persistence or pace, [Fortmann] has moderate difficulties. [He] reported that he was able to pay attention until he experienced a headache. However, [he] explained that he was able to finish an activity that he started. In addition, he was able to follow both written and spoken instructions, and he enjoyed reading and watching television if he did not have a headache (Exhibit 5E/7, 8). Moreover, [Fortmann] testified that he did not have problems with concentration or attention when he was on his medications.

(Administrative Record at 14.) Third, the ALJ also properly addressed Fortmann's difficulties with depression. For example, the ALJ noted "during instances where [Fortmann] reported increased depression, his affect was described as appropriate, and his

attention was noted as intact. (Exhibit 10F/5)."[10] Similarly, "a mental status examination from January 2015 confirmed that [Fortmann] was oriented, his concentration was good, and he denied suicidal ideations. (Exhibit 20F/17, 18)."[11]

Based on these findings, the ALJ addressed Fortmann's alleged concentration, attention, and pace difficulties in her RFC assessment by limiting him to "tasks learned in thirty days or less, involving no more than simple work related decisions, requiring little to no judgment with only occasional workplace changes."[12] In *Brachtel v. Apfel*, a claimant was found to "often" have deficiencies of concentration, persistence, or pace. 132 F.3d 417, 421 (8th Cir. 1997). The ALJ's RFC assessment in *Brachtel*, provided that the claimant had the ability "'to do only simple routine repetitive work, which does not require close attention to detail.'" *Id.* (quotation omitted). Upon review, the Eighth Circuit Court of Appeals determined the limitations requiring the claimant to only do "'simple routine repetitive work, which does not require close attention to detail[,]'" properly accounted for the claimant's deficiencies in concentration, persistence, and pace in the ALJ's RFC assessment. *Id.*; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding the ability to do simple, repetitive, routine tasks adequately captures a claimant's deficiencies in concentration, persistence, or pace). Accordingly, in this case, the Court finds the ALJ's RFC determination that Fortmann is able to perform "tasks learned in thirty days or less, involving no more than simple work related decisions" and requires "little to no judgment with only occasional workplace changes" adequately accounts for Fortmann's deficiencies in concentration, attention, and pace.[13] *See Howard*, 255 F.3d at 582; *Brachtel*, 132 F.3d at 421. Therefore, even if inconsistent conclusions could be

---

[10] Administrative Record at 16.

[11] *Id.* at 17.

[12] Administrative Record at 15.

[13] *Id.*

drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

Finally, turning to the ALJ's overall RFC assessment for Fortmann, as discussed in detail above, the ALJ thoroughly addressed and considered Fortmann's medical history and treatment for his complaints in determining his RFC.[14] The ALJ also properly considered and thoroughly discussed Fortmann's subjective allegations of disability in making her overall disability determination, including determining Fortmann's RFC.[15] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Fortmann's medical records, observations of treating physicians, and Fortmann's own description of his limitations in making the ALJ's RFC assessment for Fortmann.[16] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes Fortmann's assertion that the ALJ's RFC assessment is flawed is without merit.

### 3. *Hypothetical Questions*

Fortmann argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Fortmann also argues that the ALJ's hypothetical question did not contemplate all of his functional

---

[14] *See id.* at 15-18 (providing a thorough discussion of Fortmann's overall medical history and treatment).

[15] *Id.* at 18-19 (providing a thorough discussion of Fortmann's subjective allegations of disability).

[16] *Id.* at 15-19 (providing a thorough discussion of the relevant evidence for making a proper RFC determination).

limitations. Fortmann maintains this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Fortmann's testimony in determining Fortmann's impairments and functional limitations.[17] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes the ALJ's hypothetical question properly included those impairments which find substantial support in the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

---

[17] *See* Administrative Record at 15-19.

## V. CONCLUSION

The Court finds the ALJ's determination at step 2 of the sequential test, that Fortmann's obstructive sleep apnea is not a severe impairment, is supported by substantial evidence. The Court further finds the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Finally, the ALJ's hypothetical question to the vocational expert properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.     The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.     Plaintiff's Complaint (docket number 4) is **DISMISSED** with prejudice; and

3.     The Clerk of Court is directed to enter judgment accordingly.

DATED this   7th   day of June, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA